## W. L. HEMMINGWAY, State Treasurer, vs. VICKSBURG & NASHVILLE RAILROAD COMPANY.

1. MANDAMUS: *Railroad. Aid by the Legislature. Act of April 18, 1873, proviso to § 2. Act of April 1, 1876, construed. Case in Judgment.*

By the act of April 18, 1873, certain funds therein named were set aside and appropriated to aid in the construction of the Vicksburg & Nashville Railroad Company, $8,000 per mile, to be paid as certain miles were completed, the state treasurer to pay it out on the order of the governor, taking the notes of the company, and, as collateral security, its first mortgage bonds for an equal amount, with this proviso: "That if at any time the legislature shall deem the securities of said company insufficient, the said company shall be compelled to give such additional security as may be demanded to make the indebtedness, secure." Five miles being completed, the lieutenant-governor (acting governor) ordered the payment.—$40,000. Before payment the legislature, by act of April 1, 1876, required that "said company shall, in addition to the security already required, deposit with the state treasurer bonds of the state of Mississippi * * * to the amount of one hundred per cent. of the sum drawn out of the treasury." *Held*, that the proviso to the act of April 18, 1873, was an express reservation of the right of the legislature to judge of the sufficiency of the securities, and *at any time* to require additional security, such as the legislature may demand to make the indebtedness secure, and that the company is not entitled to a delivery of said funds without giving the additional security required by the act of April 1, 1876.

ERROR to the Circuit Court of *Hinds* County.

(In vacation.)   Hon. S. S. CALHOON, Judge.

A sufficient statement of the facts in this case will be found in the opinion of the court.

The errors assigned are:

1. The court erred in granting the peremptory writ of *mandamus* compelling plaintiff in error to pay the money demanded.

2. The court erred in not dismissing the relator's petition.

*G. E. Harris*, Attorney General, for plaintiff in error:

The fund in controversy was donated by act of Congress of July 2, 1862. (U. S. Statutes at Large, vol. 12, pp. 503, 504.) It was drawn by the state and applied to the two universities, and invested in state bonds, at 8 per cent. interest.   By act of the legislature of April 18, 1873, the state treasurer was directed to loan the same to the Vicksburg & Nashville Railroad Company, to an amount equal to $8,000 per mile, as the road progressed, taking the note of the company, with their first mortgage bonds, as collaterals.   The 2d section of the act contains this proviso :

"*Provided*, That if at any time the legislature shall deem the securities of said company insufficient, the said company shall be compelled to give such additional security as may be demanded to make the indebtedness secure."   The company completed five miles of their road, and procured the order of the lieutenant-governor (then acting governor) for $40,000. Before it was paid the legislature, acting under the right reserved in the proviso above quoted, by act of April 1, 1876, required additional security, as follows :   "The said company shall, in addition to the security already required, deposit with the state treasurer bonds of the state of Mississippi  *  *  * to the amount of one hundred per cent. of the sum drawn out of the treasury."

The case presents but a single question :   Had the legislature the power to pass the act of April 1, 1876?   If so, that must decide this case.   I insist that the right was reserved, and that the legislature was competent to pass the act.   It was no violation of a contract, because there was no contract in the case. It was a mere promise to loan on certain terms, with the right reserved to change the terms of the loan.   See 11 How. (U. S.), 420 ; 2 Peters, 413 ; Jackson *v.* Lamphire, 3 Peters, 289 ; Prov. Bank *v.* Billings, 4 Peters, 563 ; United States *v.* Arredoodo, 6 Peters, 729.   There is no constitutional question involved in this case.   To sustain a *mandamus*, there must be demand and refusal.   High on Ex. Leg. Rem., § 13.   Both must be explicit.   58 Ill., 191 ; 34 N. J., 254.

2

*W. L. Nugent*, on the same side :

There is no contract between the state and defendant in error. Cooley's Con. Lim., 276, 279, 281, 283, 284. The growing disposition on the part of the courts to make exceptions to the rule, admonishes us that the profession at large is not satisfied with the adjudication made in the Dartmouth College case, and it is generally conceded that the police power of the state cannot be alienated, even by express grant. Cooley's Con. Lim., 283, 284. When the state is under a duty to replace the capital that may be lost, she ought to have the choice of investments, or the right to select them, and it was intended that such discretion should be conferred, and if at any time the legislature should discover that an investment authorized was unsafe, the legislature is competent to direct such investment not to be made. *The discretion of the legislature over the subject is full,* and no other department of the government can interfere.

There is no vested right. See act of April 18, 1873, and act of April 1, 1876; 103 Mass., 257; 21 N. Y., 14; 31 N. J., 521, 579. See, also, Patton *v.* Brown, 3 Wis., 535; Cooley's Con. Lim., 284. The state had the right to repeal the act of 1873. On this subject the authorities are collected in a foot-note to page 266, 3 Wis. Rep.

*Harris & George,* for defendant in error :

Under the act of 1873 the company completed five miles of its road, and procured an order on the state treasurer. The attorney general had the payment enjoined ; the injunction was dissolved ; on the 16th of February, 1876, demand was made, but, under the advice of the attorney general, the state treasurer refused to pay the money—$40,000—then due. The act of April 1, 1876, requires the deposit of state bonds equal to the amount to be delivered to the company, and, on the 10th of April, assuming that no attempt would be made to comply, an act was passed withdrawing the appropriation made by the act of 1873, and devoting it to the general uses of the state. The fund amounts to $227,000,

consisting of state bonds. The act of 1873 was an appropria-tion, in terms, to enable the road to draw the funds as the work progressed. The work was done, the inspection made, and the requisition granted and presented, before any change was made in the law. The company became entitled to the fund as early as September, 1874, and the court in dissolving the injunction, which had been improperly issued, decided that the law of 1873 must be obeyed by the officers of the state. The legal demand was made, and the payment refused by the treasurer.

One ground of defense is that the five miles were not com-pleted on the faith of the appropriation; another is that the act of 1876 requires additional security, which was not ten-dered; and, lastly, that he had disposed of the fund, under act of April 10, 1876, before the petition was filed. As to the first ground, it involves facts which have been clearly proved, and sustains the petition. The remaining grounds may be considered together. The two acts of 1876 evinced the whole purpose of the legislature. The act of April 1, 1876, was intended to withdraw the appropriation by the exercise of the right reserved in the proviso to the act of 1873. The fund was in state bonds, and the act requires a deposit of bonds to an equal amount, and virtually withdraws the appropriation. It presents a financial impossibility. The proviso must not be so construed as to defeat the purpose of the law. The con-struction must be reasonable.

The act of 1873 was accepted; it was a contract; it had been acted upon by the company; it cannot be withdrawn. Judge Cooley says when the proposition has been accepted it cannot be withdrawn by a repeal of the law. Cooley's Con. Lim., 284 (margin); 2 Black (U. S.), 448–458; People v. Needelir, 9 Mich., 327; Montgomery v. Kasson, 16 Cal., 189; Woodruff v. Tapnell, 10 How.; Furman v. Nichols, 8 Wallace; 3 Nebraska, 373; 36 Texas, 382–429.

CAMPBELL, J., delivered the opinion of the court.

This is a proceeding to obtain a *mandamus* to compel compliance with the demand of the officials of the Vicksburg & Nashville Railroad Company, made on the state treasurer under the 2d section of "An act to aid in the construction of the Vicksburg & Nashville Railroad." Approved April 18, 1873 (pamphlet acts, p. 576). The 1st section of that act appropriates, and sets apart in the hands of the state treasurer, to be used in the construction of the Vicksburg & Nashville Railroad, and for no other purpose whatever, all of certain funds designated by it; and the 2d section provides for the paying over to the president or treasurer of said company, from said special fund thus set apart, of $8,000 per mile for each mile completed, of five miles or more completed, upon the order of the governor; and so on, from time to time, as provided.

The first proviso of said 2d section is to require, as the condition precedent to the delivery of any part of said special fund to the officer of said company, the execution and delivery, by the proper officers of said company, of the notes or obligations of the company for the amount received, payable in ten years from date, with 8 per cent. interest, payable semi-annually, on first days of January and July of each year, secured by the first mortgage bonds of said company to the amount of the sum to be paid to the company of said special fund. The second proviso of said section is: "Provided that if at any time the legislature shall deem the securities of said company insufficient, the said company shall be compelled to give such additional securities as may be demanded to make the indebtedness secure." Said company completed five miles of said road, made it known to the governor, obtained his order on the treasurer, and presented it to him, demanding compliance with said order, which was refused.

On the 1st of April, 1876, was approved an act entitled "An act to secure to the state the Agricultural Land Scrip Fund, and for other purposes" (pamphlet acts, p. 64), which recites the provisions of the above-mentioned act, and pronounces the

security required by said act to be insufficient to secure said funds, and provides that, before any of said funds shall be delivered to said railroad company, said company shall, in addition to the security already required, deposit with the state treasurer bonds of the state of Mississippi   *   *   *   to the amount of one hundred per cent. of the sum drawn out of the treasury."

The question is whether the railroad company, having completed five miles of road, and complied with the act of April 18, 1873, *supra*, is—notwithstanding the act of April 1, 1876, cited above, approved subsequent to the completion by said company of the five miles of road—entitled to have delivered to it $40,000 of said special fund, upon delivery to the state treasurer of its notes or obligations and first mortgage bonds, as provided by the first-mentioned act, *supra*. But for the last proviso to the 2d section of said act of April 18, 1873, the question would be free from all difficulty. The act, without such proviso, would be held to amount to a contract between the state and the company to entitle the company to a delivery, by the state treasurer, of $8,000 of said special fund for each mile of said road it completed before a repeal of said act, upon full compliance by said company with the provisions of said act.

But that proviso is an express reservation, in language as plain as could be adopted, of the right of the legislature to judge of the sufficiency of the securities of the company, and, *at any time*, to require additional security, such as the legislature may demand, to make the indebtedness secure. No comment can make the language of the proviso plainer. It needs no interpretation and requires no construction. It is unmistakably a qualification of the right of the company to demand and enjoy the fund appropriated and set apart by the act, and makes it conditional on the action of the legislature as to the requirement of additional securities, such as it may demand. The purpose of the act was to aid in the construction of the railroad by a loan of certain designated funds, but an equally

manifest purpose was to secure the payment of the sums loaned by the state to the company as they should fall due, and with a view to this the right was by the act reserved to the legislature to judge of the security, and, if it was deemed insufficient, to demand such additional securities as it might determine on, and to exercise this right *at any time*. The act of the 1st of April, 1876, cited, contains an express declaration of the insufficiency of the securities of the company, and a requirement of additional securities. It was competent for the legislature to require additional securities, and it had a discretion, which courts cannot control, as to what additional securities should be required. The legislature having declared the insufficiency of the securities of the company before the delivery by the treasurer to the company of any part of said special fund, the company is not entitled to a delivery of said fund without giving the additional securities required.

It is said that the act of 1st of April, 1876, mentioned, requires of the company a financial impossibility. If so, it presents a cogent reason for a modification by the legislature of its requirement; but it is enough for the court to know that the legislature, in the exercise of its undoubted right as reserved by the proviso to the act of appropriation mentioned, has declared that it deems the securities of the company insufficient, and has required additional securities. The court has nothing to do with the question of the character of the additional securities demanded. If the legislature has changed from friendliness to hostility to the enterprise intended to be aided by the act of 18th of April, 1873, and has disappointed the hopes of the railroad company by an unreasonable demand of such additional securities as cannot be given, it should be remembered that the mutations of time and circumstances often produce disappointment of the fondest expectations, and that no certain calculations can be based on legislation, which is liable to change with every change of popular feeling under our frequently recurring elections and sessions of the legislature. It is the misfortune of the company, and those dealing with it in the hope of real-

izing under the act of 18th April, 1873, not to have completed five miles, and, avoiding all hindrances, to have obtained the appropriation from the treasury before any hostile action of the legislature. If it did complete the five miles, and was hindered and thwarted in obtaining what it was entitled to, under the act of 1873, by the interference of the officials of the state, it has but encountered such difficulties as often hinder the consummation of the plans of the citizen.

In answer to the suggestion of counsel that it must be supposed by the court that the additional securities, which the legislature reserved the right to demand, were such as a railroad company, in the infancy of its existence, could be expected to give, we refer to the phraseology of the proviso, copied above, which is, in effect, that if the *securities of* the company shall be deemed insufficient, it may be compelled to give such *additional* securities *as may be demanded*. Not *its* securities only, but *additional* securities, implying others. Not such as it may be able to give, but such *as may be demanded*, giving unlimited discretion to the legislature as to what it should demand.

We have examined this case carefully, with the desire to enforce any right of the railroad company, and compel a due observance of the law on the part of the state official against whom the *mandamus* is sought, and the result of mature consideration is to cause us to reverse the judgment and dismiss the petition for *mandamus*.